IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
ANTHONY M. DIGIACOMO,           :
         Plaintiff,   :            CIVIL ACTION
:
v.                              :
COMMISSIONER OF SOCIAL          :
SECURITY,                       :
         Defendant.   :            No. 09-2677
_____:

**MEMORANDUM RE: SOCIAL SECURITY APPEAL**

**Baylson, J.**                                                        **April 16, 2010**

      Plaintiff, Anthony M. DiGiacomo, proceeding pro se, seeks judicial review of the decision by the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Supplemental Security Income under the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 et seq. After careful and independent consideration of the matter, and for the following reasons, the Court will affirm the Commissioner's decision.

**I.    Background and Procedural History**

      On November 8, 2006, plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on August 14, 2001. (R. 12). Plaintiff is blind in his right eye and complains of symptoms resulting from diabetes mellitus, hypertension, and hyperlipidemia, as well as side effects resulting from medications prescribed with respect to these conditions, that prevent him from working.

      The Social Security Administration denied plaintiff's application on April 9, 2007. (R. 53–57). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). The

hearing was held before ALJ Owen B. Katzmann on November 3, 2008.[1] At the hearing, ALJ Katzmann received testimony from plaintiff and from Steve H. Gumerman, Ph.D., a vocational expert. (R. 20–46). In his written decision of December 24, 2008, ALJ Katzmann denied plaintiff's application, holding that plaintiff was not "disabled" within the meaning of the Act. (R. 12–19). In particular, the ALJ found that plaintiff suffered from the severe impairment of blindness in the right eye, but that plaintiff's complaints of diabetes mellitus, hyperlipidemia, and hypertension were non-severe and his complaint of right arm and knee pain was not medically determinable. With respect to plaintiff's blindness in his right eye, the ALJ found that this severe impairment did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1, due to the quality of corrected vision in plaintiff's left eye. The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the non-exertional limitation that he can only see with his left eye, and that plaintiff is able to perform past relevant work doing demolition work. While this determination was sufficient in itself to render plaintiff not "disabled" under the Act, the ALJ continued his analysis in the alternative, determining that, based on plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that plaintiff could perform.

Plaintiff timely filed a request for review of the ALJ's decision. On May 14, 2009, the Appeals Council denied plaintiff's request. (R. 1–4). Plaintiff subsequently filed the instant action challenging the decision of the ALJ on numerous grounds. Plaintiff filed a Complaint

---

[1] This hearing was initially scheduled for June 8, 2008, but was continued due to plaintiff's incarceration. (R. 12).

requesting review on June 18, 2009 (Doc. 3), which he later amended (Doc. 8). Defendant filed an Answer on August 21, 2009. (Doc. 10). Plaintiff filed his Brief and Statement of Issues in Support of Request for Review on December 8, 2009 (Doc. 13), to which defendant responded on January 11, 2010 (Doc. 14). Plaintiff filed a Rebuttal to this Response on January 25, 2010. (Doc. 15). On March 3, 2010, plaintiff filed a Statement regarding confirmation of his medical incapacity (Doc. 16); the following day, defendant filed a Motion for Leave to File a Response to Plaintiff's Statement, with the proposed Response attached (Doc. 17).

## II.     Legal Standards

### A.     Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

### B.     Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' . . . ." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). In reviewing the record for substantial evidence, however, the Court " may not 'weigh the evidence or substitute [its own] conclusions for those of the fact-finder.'" Id. (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). The Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396,

3

398 (3d Cir. 2005).

### C. Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim must be denied. 20 C.F.R. § 416.920(b). Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subp. P, App. 1, the claim is approved. 20 C.F.R. § 416.920(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the RFC to meet the physical and mental demands of his or her past relevant work. 20 C.F.R. § 416.920(e)–(f). Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. § 416.920(g).

### III. Discussion

According to plaintiff, the ALJ made several errors in applying this analysis to plaintiff's

claim for SSI benefits: (1) the ALJ improperly disregarded the opinions and diagnoses of numerous doctors that previously have examined and treated plaintiff; (2) the ALJ improperly disregarded the side effects of plaintiff's medications; and (3) contrary to statements made in the ALJ's decision, plaintiff has kept, and continues to keep, a strict program of medications and diet to the best of his ability.² (Docs. 8, 13). Additionally, plaintiff notes that, according to a letter dated February 18, 2010, the Social Security Administration has concluded that it has received enough evidence to begin awarding him SSI benefits for disability commencing July 1, 2009; this determination, plaintiff contends, confirms his disabled status for the preceding period of time for which he seeks, and has been denied, such benefits in the present case. (Doc. 16).

**A.      Doctors' opinions**

A bulk of plaintiff's objections to the ALJ's decision pertain to the ALJ's treatment of various medical reports of treating and consultative physicians contained in the record. According to plaintiff, the ALJ failed to properly credit aspects of these reports that support plaintiff's claim of disability in the present case, and as a result erred in his conclusions that these reports were not medically supported and that plaintiff could perform past relevant work.

The ALJ is required to evaluate every medical opinion received. See 20 C.F.R. § 416.927(d). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of

---

²Plaintiff also raises an objection regarding his prior conviction for unlawful contact with a minor, which the ALJ references in his decision. (R. 17). Plaintiff's objection, however, appears to pertain not to the ALJ's decision, but to events surrounding the conviction itself, (Doc. 8 at 17–18), and thus is not properly raised before the Court in this case.

time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). While "an ALJ may not simply ignore the opinion of a competent, informed, treating physician," Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986), an ALJ has discretion to reject the opinions of doctors, including treating physicians, if their findings are not well supported by medically acceptable clinical and laboratory diagnostic techniques, or they are inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 416.927(d)(2)–(4). A treating physician's opinion may be afforded "more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429. Where there is conflicting evidence, the ALJ must not only discuss the evidence that supports his or her determination but also must explain the evidence that he or she rejects. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (citing Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979)); see also Wisniewski v. Comm'r of Soc. Sec., 210 F. App'x 177, 179 (3d Cir. 2006) (nonprecedential) (clarifying that "Cotter does not require an ALJ to explain why evidence that is not probative has been rejected"). In particular, where the opinion of a treating physician conflicts with that of a non-treating physician, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429). The ALJ must consider the treating physician's assessment, and in choosing to reject it, "may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429).

In the present case, the record contains medical reports from the following treating

6

sources. Dr. Victoria Borgia (R. 217–20, 412–20); Dr. Leonard Popowich (R. 238–37, 239–46); Northeastern Hospital (R. 247–73); and the Philadelphia Prison System (R. 275–411).[3] The record also contains a report from a consultative examiner, Dr. Jerry Ginsberg, DO. (R. 221–28). In his written decision, the ALJ specifically discussed each of these sources, their findings, the weight he would assign them, and the reasons why. The ALJ determined that the report of Dr. Ginsberg merited "primary weight" as "the most objective evidence," and noted that "[a]lthough there are opinions from treating physicians stating that claimant is disabled, these opinions are not medically supported." (R. 17). Plaintiff takes issue with this analysis, and in particular with the ALJ's treatment of reports from Dr. Popowich and Dr. Borgia indicating that plaintiff is disabled: Dr. Popowich, on a Medical Assessment form dated December 10, 2007, checked a box indicating that plaintiff is "incapacitated," which is defined on the form as having a "[p]rofoundly limiting physical or mental condition which permanently precludes any form of employment" (R. 236–37); and Dr. Borgia, on two Employability Re-Assessment Forms for the Pennsylvania Department of Welfare (one dated May 26, 2006, the other December 19, 2006), checked a box indicating that plaintiff is "temporarily disabled," which is defined as being "disabled due to a temporary condition or as a result of an injury or an acute condition and the disability <u>temporarily</u> precludes any gainful employment." (R. 217–20). These reports do not contain any explanation of these findings of disability. In his decision, the ALJ considered these

---

[3]The record also indicates that an attempt was made to obtain evidence from Girard Medical Center, but no medical records were found. (R. 274).
In his briefing, plaintiff makes reference to a variety of doctors who, he contends, have made, or will make, findings supporting his claim of disability, but does not indicate where in the record these findings are located. The Court has performed its own review of the record, and its analysis of this objection is limited to those findings raised by plaintiff that the Court was able to identify in the record.

reports, but found them to be unsupported by or inconsistent with the other evidence in the record, including other treatment notes and findings made by Drs. Popowich and Borgia themselves. (R. 16).

Based on its review of the record, the Court finds that the ALJ's conclusions regarding the forms completed by Drs. Popowich and Borgia are supported by substantial evidence, and that the ALJ acted within his discretion in his assessment of the weight that these forms should be afforded in his analysis. See 20 C.F.R. §§ 416.927(d)(2); see also Plummer, 186 F.3d at 429 (A treating physician's opinion may be afforded "more or less weight depending upon the extent to which supporting explanations are provided."); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").[4]

Plaintiff also disputes the ALJ's treatment of Dr. Ginsberg's report. Though crediting a large part of this report, the ALJ concluded that Dr. Ginsberg's "finding that claimant can lift/carry only 10 pounds frequently is unsupported and most likely listed because of claimant's age; that aspect of Dr. Ginsberg's functional capacity assessment is not adopted." (R. 17). In his Medical Source Statement for plaintiff, Dr. Ginsberg checked boxes indicating plaintiff could lift and carry 10 pounds frequently. (R. 226). On the form, space is provided below these boxes for

---

[4]Plaintiff also objects that the ALJ's conclusion that the definition of disability under the Social Security Act is reserved for the ALJ was erroneous. In additional support for his conclusion that "[t]here is nothing in Dr. Borgia's treatment notes to justify disability," the ALJ noted that "the definition of disability is unique for Social Security purposes, and the opinion as to whether a claimant is disabled under Social Security law and regulations is reserved to the Commissioner." (R. 16) This statement serves to explain why a determination of disability by medical sources or other governmental agencies, for instance, is not controlling as to whether the individual is disabled under the Social Security Act, and is a sound articulation of the law in this area. See, e.g., 20 C.F.R. § 416.927(e)(1); 20 C.F.R. § 416.904.

8

"[s]upportive medical findings, if not otherwise included in report"; this space is blank on Dr. Ginsberg's form, and the Court does not see any findings in the rest of his report that provide any support for these lifting and carrying limitations. Furthermore, the RFC Assessment of plaintiff determined that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently. (R. 230). Accordingly, the Court finds that substantial evidence supports the ALJ's characterization of this aspect of Dr. Ginsberg's report as "unsupported," and that the ALJ acted within his discretion in choosing not to adopt it.

## B. Side Effects

Plaintiff contends that the ALJ failed to properly account for the numerous, debilitating side effects of plaintiff's medications in his assessment of plaintiff's condition. (Doc. 8 at 15; Doc. 13 at 3; Doc. 15 at 4). The ALJ noted that plaintiff "testified to having multiple side effects of medication. However, none of these side effects is documented in the medical record, and they are medications taken by many individuals for common conditions, including diabetes mellitus, hyperlipidemia, and hypertension." (R. 16). The ALJ subsequently concluded, more generally, that plaintiff's "statements concerning the intensity, persistence and limiting effects of the[] symptoms [of which he complains] are not credible to the extent they are inconsistent with the . . . RFC assessment." (R. 17).

A core function of the ALJ's role is to make credibility determinations on the evidence in the record, including the statements and complaints made by claimants. See, e.g., Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). These findings

must be specific enough to allow a reviewing court the opportunity to ascertain which evidence was accepted, which was rejected, and the reasons why. Cotter, 642 F.2d at 705.

As noted above, the ALJ considered plaintiff's complaints of side effects but did not find them supported by the medical evidence before him. The Court has not found, and plaintiff has not identified, medical evidence in the record indicating that plaintiff's medications had the effects of which he complained. While the record contains references to past complaints made by plaintiff regarding the side effects he felt his medications were having on him, as defendant points out, these complaints are not supported by findings in other medical reports and are, at times, internally contradictory. (Doc. 14 at 14–15). The ALJ also concluded that plaintiff was, in general, not a credible source regarding the nature and impact of the symptoms of which he complained, citing in particular to the exaggerated responses plaintiff gave on his Activities of Daily Living Questionnaire, which "seem[ed] quite extreme on their own and in light of the record as a whole." (R. 16). The Court believes the ALJ's credibility determination in this regard was adequately supported and, in light of that determination and the evidence in the record, sees no error in the ALJ's decision not to credit more heavily plaintiff's complaints of side effects.

### C. Strict Regime of Medications and Diet

Plaintiff maintains that he has followed, and continues to follow, a strict regime of medications and diet to the best of his ability, presumably in objection to statements by the ALJ that plaintiff has been noncompliant in this regard. (R. 14, 16-17). As made clear by the ALJ's discussion, however, these statements are derived from and supported by substantial evidence in the record—namely, plaintiff's own testimony and the notes of multiple treating physicians. The

Court therefore rejects this objection.

### D. Subsequent Disability Determination

Lastly, plaintiff has informed the Court that the Social Security Administration has recently determined that it has enough medical evidence to begin paying SSI benefits to him, and has submitted a letter from the Administration to this effect. (Doc. 16). According to plaintiff, such benefits would be paid for disability commencing July 1, 2009. This determination, plaintiff contends, makes clear that he was disabled and likewise entitled to SSI benefits for the preceding period of time at issue in this case, and thus that the ALJ erred in his conclusion otherwise. As defendant correctly notes, however, this recent determination does not bear on the Court's assessment of the ALJ's decision in this case. See, e.g., Nieves v. Comm'r of Soc. Sec., 198 F. App'x 256, 260 n.3 (3d Cir. 2006) (nonprecedential) ("Our determination [that the ALJ's decision in 2001 was based on substantial evidence] is in no way swayed by the fact that in October of 2003 an ALJ determined that the petitioner was disabled. As per 42 U.S.C. § 405(g), our review is limited to the evidence in the record at the time of the 2001 decision of the ALJ and we are therefore not required, nor able, to consider this subsequent ALJ ruling when rendering our decision."). Accordingly, the Court disagrees with plaintiff's assertion that the subsequent award of SSI benefits for disability commencing July 1, 2009, undermines the validity of the ALJ's prior determination or affects plaintiff's entitlement to such benefits for disability commencing November 8, 2006.

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision is affirmed. An appropriate order follows.